IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

TRAVIS DELANEY WILLIAMS,

                Plaintiff,              OPINION AND ORDER

   v.

                                      20-cv-1021-wmc

SHERYL KINYON, ERIN WEHRLE,
SANDRA MCARDLE, JAMIE
ADAMS, and JAMIE ADAMS,

                Defendants.
---

*Pro se* plaintiff Travis Williams is incarcerated at the Wisconsin Secure Program Facility ("WSPF"). Williams initially filed this civil rights lawsuit under 42 U.S.C. § 1983 in the Eastern District of Wisconsin, and District Judge William Griesbach granted Williams leave to proceed against WSPF employees Sheryl Kinyon, Erin Wehrle, Sandra McArdle, and Jamie Adams, all of whom allegedly responded with deliberate indifference to Williams' need for medical attention after he fell on June 24, 2019, in violation of his rights under the Eighth Amendment. More specifically, that court granted him leave to proceed on claims that: defendants Kinyon and Adams failed to provide him medical care on the day Williams' fell; defendant Wehrle failed to provide adequate medical care days later when she examined Williams a few days after his fall; and defendant McArdle refused to examine him on July 1, then delayed examining him until August, and failed to provide adequate pain medication when she did finally see him. (Dkt. #17.)

On November 9, 2020, Williams' case was then transferred to the Western District of Wisconsin (dkt. #35), following which Williams filed motions to amend his complaint,

attaching a proposed amended complaint (dkt. ##44-45), and for assistance in recruiting counsel (dkt. #71).[1]  Additionally, defendant Sandra McArdle and Erin Wehrle's filed separate motions for summary judgment, each on the ground that Williams failed to exhaust his administrative remedies.  (Dkt. ## 47, 52.)  For reasons set forth below, the court will deny plaintiff's motion to amend his complaint, as well as his request for assistance in recruiting counsel.  As for defendants Wehrle's and McArdle's motions, Williams does not contest his failure to appeal certain administrative decisions but maintains that the appeal system was not reasonably available to him.  However, he has submitted no *evidence* creating a genuine dispute of material fact as to his ability to appeal those decisions.  Accordingly, the court will grant defendants' motions for partial summary judgment and dismiss Williams' Eighth Amendment claims against defendants McArdle and Wehrle, albeit without prejudice.

---

[1] Williams has since also filed other motions related to his ability to litigate his case adequately. (Dkt. ##63, 68.)  Preceding these motions, Williams took issue with the responses of the W.D. Clerk's Office to his requests for clarification of the deadlines in this case, certain documents to be resent, and receipt of all the filings in this case.  (Dkt. #60.)  In response, the Clerk's Office informed Williams of the cost of copies, while mistakenly listing his last name as "Smith."  (Dkt. #61.)  In one of his motions, Williams points out this clerical error and once again asks that the court take up his requests.  Aside from the incorrect last name, however, the Clerk's Office had already properly responded.  If Williams needs copies of any of the filings in this case, the Clerk's Office handles those requests, and if Williams has a need to obtain *free* copies of any submissions, he will need to provide good cause to the Clerk's Office.  Similarly, although Williams appears to represent that some of his materials were confiscated from him due to a paper restriction, his submissions also indicate that he is allowed to possess legal materials pertaining to his pending cases.  (*See* dkt. #70-1.)  Accordingly, Williams will need to clarify with the Clerk's Office this apparent inconsistency.  Finally, Williams takes issue with W.D. Magistrate Judge Crocker's order denying Williams' request to have a paper restriction removed, but again Williams continues to have access to papers, writing materials and at least some of his legal materials.  Accordingly, the court will deny these additional motions.  Unless Williams has a good faith and specific basis to assert that prison officials' restrictions on his property are preventing him from litigating this case, the court is not inclined to require defendants to respond to these missives, much less second-guess the restrictions WSPF officials have placed on his property.

OPINION

I.  **Williams' Motions**

  A. **Motion for leave to Amend and Proposed Amended Complaint (dkt. ##44, 45)**

Williams first claims that Judge Griesbach's screening order permitting him leave to proceed misconstrued his claims, and because he would like to include a new defendant, Nurse Mary Seaman, now seeks to amend his complaint.  Generally speaking, this court will freely grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).  Here, the court must deny Williams' motion as his proposed amended complaint would indeed be futile.

As an initial matter, with the exception of including allegations related to Nurse Seaman, Williams' allegations with respect to additional defendants for whom leave to proceed was already denied (J. Hill, Julia Payne, Andrea Titlbach, John Doe and Daniel Hagan) remain the same as in his original complaint.  (*Compare* dkt. #1 *with* dkt. #45.)[2] Judge Griesbach properly dismissed these other, putative defendants because Williams' actual, factual allegations did not support the Eighth Amendment deliberate indifference

---

[2] In addressing any *pro se* litigant's complaint, the court must read the allegations generously, resolving all ambiguities and making reasonable inferences in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).  For purposes of this order, the court assumes facts based on the allegations in plaintiff's complaint, proposed amended complaint and attachments, unless otherwise noted.

3

claims against them.  In particular, as Judge Griesbach already found on the facts alleged, defendants Doe and Hagan were not responsible for any delay in Williams' receiving treatment for his injury; defendant Payne's allegedly sham investigation of Williams' subsequent inmate complaint did not contribute to the alleged, preceding constitutional violations; and Williams' allegation that defendants Titlbach and Hill refused to provide him copies of a document he needed to appeal his dismissed inmate complaint did not permit a reasonable inference that they precluded him from pursuing a non-frivolous claim. (*See* dkt. #17, at 7-9.)  Williams has identified no error or law or fact in Judge Griesbach's reasoning, nor has this court.

As for the proposed addition of Nurse Seaman as a defendant, Williams alleges that four days after defendant Wehrle saw him (seven days after the injury), a "white shirt" officer reported Williams' condition to Nurse Seaman.  Williams further alleges that Seaman noted Williams' reported injuries at that time, but did not come to visit him or treat him.  Even accepting these allegations as true for purposes of considering plaintiff's motion for leave to amend, however, they are insufficient to support an Eighth Amendment deliberate indifference claim.

A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need."  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "Serious medical needs" include (1) conditions that are life-threatening or that carry risk of permanent serious impairment if left untreated, (2) withholding of medical care that results in needless pain and suffering, or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir.

4

1997). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Assuming that Williams' injury and related pain constituted a serious medical need, his proposed allegations do not support an inference of deliberate indifference by Seaman. For example, Williams fails to allege what information the officer actually relayed to Nurse Seaman about Williams' condition that day, either as to the extent of his pain or the state of his injuries, much less whether Williams was actually requesting medical attention. As such, it would be unreasonable on these limited facts to infer that Nurse Seaman's alleged decision neither to visit Williams at his cell nor provide further treatment amounted to a failure to take reasonable measures in response to Williams' serious medical need, especially since Williams had already been seen twice already for alleged injuries and pain related to his fall in the previous seven days. Accordingly, the court will deny Williams' motion to amend as futile.

### B. Motion for Assistance in Recruiting Counsel (dkt. #71)

The court will also deny Williams' request for assistance in recruiting counsel at this time, albeit without prejudice as to his remaining claims. Unfortunately, civil litigants have no constitutional or statutory right to the appointment of counsel. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, the court may exercise discretion in deciding to help recruit counsel to assist an eligible plaintiff who proceeds under the federal *in forma pauperis*

statute.  *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent an indigent civil litigant *pro bono publico*.").

Before deciding whether to recruit counsel, however, this court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful. *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992).  At this point, Williams has submitted no evidence of his efforts to recruit an attorney on his own, so his motion must denied for that reason alone.  Moreover, even assuming Williams had demonstrated his specific, unsuccessful efforts to recruit counsel on his own, the court is not persuaded that recruitment of counsel is appropriate in Williams' circumstances, at least at this stage in his lawsuit.  In particular, Williams asks that the court recruit counsel for him in this and other of his pending cases, pointing to his various health issues, a recent heart attack, and a COPD diagnosis.  Although the court sympathizes with Williams' health problems, the current restrictions on his movements and his belief that his medical needs are being intentionally ignored, Williams' submissions to date does *not* suggest that he is unable to litigate his claims in this case without the assistance of an attorney.  *See Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (*en banc*) (explaining that the central question in deciding whether to request counsel for an indigent civil litigant is "whether the difficulty of the case– factually and legally–exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself").

On the contrary, Williams is an experienced litigator in this court.  As he notes, this is just one of several lawsuits that he is currently pursuing.  Williams' motion to amend and response to defendants' motions for partial summary judgment also demonstrate that

6

he recalls the events comprising his claims in this lawsuit and understands the standards governing the merits of his claims, as well as the legal standard applicable to McArdle's and Wehrle's affirmative defense of exhaustion. Furthermore, Williams currently is pursuing a motion to compel and responding to defendants' motion to compel and for sanctions, and the submissions related to those motions indicate a clear understanding of the rules of discovery, as well as Williams' ability to be an aggressive and overly zealous litigator, not that the demands of this lawsuit exceed his abilities. Given this, and the limited pool of attorneys willing to take on such cases, even when recruited by this court, it must decline Williams' request to recruit counsel at this time, but the court does so without prejudice to Williams renewing it, should this case proceed to trial *and* should Williams make a detailed, specific showing as to his efforts to recruit counsel and his inability to litigate this case.

      Finally, the court notes that Williams fairly points out that defendants' motions to dismiss as a sanction and for summary judgment as to his oldest case, No. 16-cv-474-wmc, remain pending. The court apologizes for its delay in resolving these motions and, as indicated in a previous text only order in that case, will endeavor to issue its opinion and order resolving these pending motions within the coming weeks. That said, the court asks for Williams' patience as his cases raise numerous claims against a large number of defendants, and Williams is far from the only *pro se* plaintiff seeking this court's intervention, some with more pressing need for review.

7

## II.     Failure to Exhaust Administrative Remedies

As noted, defendants Wehrle and McArdle also seek summary judgment, each arguing that Williams failed to exhaust his administrative remedies with respect to the claims against them.  The Prison Litigation Preform Act ("PLRA"), 42 U.S.C. § 1997e(a), demands "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [institution's] administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), including:  (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of this exhaustion requirement is to give prison administrators a fair opportunity to resolve grievances without litigation.  *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  If a prisoner fails to exhaust administrative remedies before filing a lawsuit, the court must dismiss the case.  *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).  Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that a plaintiff failed to exhaust, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).  In addition, inmates are required to exhaust only those

administrative remedies that are available to them; administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

In Wisconsin, inmates must start the complaint process by filing a complaint with the institution complaint examiner ("ICE") within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07. The complaint must also "clearly identify the issue" that the inmate seeks to raise. *Id.* § 310.07(5). Once the inmate complaint reaches the appropriate reviewing authority, a decision is rendered. If the decision is unfavorable to the inmate, they may appeal to the corrections complaint examiner (CCE). *Id.* § 310.12(1). Appeals to the CCE must similarly be made within fourteen days of denial, unless good cause is shown for an untimely filing. *Id.* § 310.12(6). The CCE then makes a recommendation to the Secretary of the Department of Corrections, who will take final action on the complaint. *Id.* § 310.13.

Here, Williams is proceeding in this lawsuit on the following Eighth Amendment claims:

- On June 24, 2019, Nurses Kinyon and Adams failed to provide medical assistance by ignoring plaintiff on one occasion and laughing at him.

- On June 27, 2019, Nurse Wehrle failed to document plaintiff's injury, or refer him to additional care.

- From July 1, 2019, until August 21, 2019, Physician Assistant McArdle refused to examine plaintiff, and failed to ensure that he would receive a medication that she prescribed for pain caused by his fall.

(7/28/2020 Order, dkt. #17.)

Williams submitted several inmate complaints related to those events. Complaint WSPF-2019-11507 was received on July 1, 2019, and in it, Williams details his interaction with Kinyon from June 24, 2019. The next day Williams submitted a second inmate complaint raising the same allegations against Kinyon, WSPF-2019-11621. On July 3, 2019, WSPF-2019-11507 was recommended for dismissal on its merits, and the reviewing authority dismissed that complaint on July 9, 2019. (Ex. 1001 (dkt #49-2) 3-4.) WSPF-2019-11621 was rejected as duplicative on July 3, 2019. (Ex. 1002 (dkt #49-3) 2.) Williams timely appealed the dismissal of the original Kinyon complaint on the day of its dismissal. (Ex. 1001 (dkt #49-2) 26; *see* Wis. Admin. Code § DOC 310.10(10).) Defendants do not have any record that Williams appealed WSPF-2019-11621, nor does Williams claim that he did. Finally, Williams filed an inmate complaint concerning his June 27, 2019, visit with Wehrle, WSPF-2019-11841. However, it was promptly dismissed following a review of his medical records, and Williams did not appeal that dismissal. The court will address defendants Wehrle's and McArdle's motions separately.

### A. Wehrle

Wehrle seeks summary judgment in light of Williams' failure to appeal the only claim implicating her, WSPF-2019-11841. In opposition, Williams argues that he was discouraged from appealing this complaint by some unidentified person who did not validate the complaint number in their system, apparently leading him to conclude that the appeal would be futile. (Opp. Br. (dkt # 57) 9.) Williams claims that he also *tried* to appeal the rejected complaint against Kinyon, along with the dismissed complaint against

Wehrle, but after being told that the "those 2 complaint numbers did not exist," he took no further action. (Williams Decl. (dkt # 58) ¶ 12.)[3] However, in support of this assertion, Williams cites to a disbursement request he submitted on *February 1, 2021*, asking for copies of these complaints. (*See* Williams Decl., Ex. 1 (dkt. #59-7).) Even if he were to obtain a copy of that response, however, that evidence would not provide evidence that when WSPF-11841 was dismissed in 2019, Williams took any steps to appeal the dismissal of WSPF 2019-11841 timely or that he was prevented from doing so.

Indeed, Williams has not explained how a response from a prison official that the inmate complaint number does not exist *prevented* him from physically filing an appeal of an adverse decision in WSPF-2019-1184. For example, Williams essentially concedes receiving a copy of the dismissal, or at least notice of dismissal, in 2019, yet did nothing to actually appeal after *some unidentified* prison official told him that he could not pursue an appeal *because* the inmate complaint number did not exist. While Williams may be suggesting that he believed his appeal of WSPF-2019-1184 might be futile, he offers nothing to show that the procedures themselves were not available to him, especially since *he* knew the complaint number, and there is no futility exception to the exhaustion requirement. As the Seventh Circuit held in *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532 (7th Cir. 1999), "[n]o one can know whether administrative requests will be futile; the only way

---

[3] Williams also references a July 15, 2017, inmate complaint, WSPF-2019-12350, apparently alleging that Kinyon retaliated against him; a claim that he was not granted leave to pursue. (7/28/2020 Order, dkt. # 17.) Williams has not detailed the contents of that inmate complaint nor how it was disposed. Neither does allege that inmate complaint implicates defendant Wehrle or McArdle. For purpose of the motions for partial summary judgment by those two defendants, therefore, an alleged, additional complaint against defendant Kinyon has no relevance.

11

o find out is to try." *Id.* at 536-37. Because Williams provides no evidence that he "tried" to appeal, then neither he nor this court can say what might have been. More to the point, the court is left with undisputed evidence that plaintiff failed to exhaust the only administrative complaint he ever filed against defendant Wehrle.

The result is much the same with respect to Williams' other asserted impediments to filing an appeal to WSPF-2019-1184.[4] First, Williams claims that he was unable to obtain a legal loan to photocopy documents in his possession, which the court will presume *may* have been helpful to his case. (Williams Decl. (dkt # 58) ¶ 22.) However, Williams fails to detail the supposedly helpful contents of such documents, much less explain how such documents were necessary for him to at least physically appeal his dismissed inmate complaint in accordance with the grievance procedures. Next, Williams complains of a paper restriction that hampered his ability to litigate *this* case, but again fails to disclose *how* this rendered the inmate complaint system wholly unavailable to him back in 2019, much less what Williams did, if anything, to overcome these unspecified impediments to appeal.

To the contrary, defendants final bit of proof is the undisputed fact that Williams acknowledges *successfully* filing at least one complaint per week throughout this *same* period in question, *and* he appealed the vast majority of those adverse rulings, including every

---

[4] This court also considers that these additional impediments may be relevant to the failure to file a complaint (or more specifically, even allege that a complaint was filed) against McArdle, but the failure to allege *any* relevant detail regarding these complaints has the same effect regarding McArdle as upon Wehrle. *See Austin v. Dane Cty. Mental Health*, No. 07-C-192-C, 2007 U.S. Dist. LEXIS 104251, at *1 (W.D. Wis. Apr. 12, 2007) ("the court is not free to invent facts").

denial of dismissal of a complaint within a month of the Wehrle complaint. (*See* dkt #49-1, at 10.)  While Williams' perfunctory allegations might be sufficient to state a claim,[5] the summary judgement stage requires "*specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added).  Accordingly, defendant Wehrle has proven at summary judgement that Williams failed to exhaust his administrative remedies with respect to the claims asserted against her, and the court will grant her motion.

### B. McArdle

McArdle also seeks summary judgment on the grounds that there is *no* evidence Williams filed *any* inmate complaints related to her treatment between July and August of 2019.  Indeed, there is no record that Williams submitted an inmate complaint regarding either McArdle's July 1, 2019, evaluation *or* any subsequent delay in his treatment.  Williams suggests that his allegations in WSPF-2019-11621 were sufficient to satisfy the exhaustion requirement as to McArdle, but Williams signed that inmate complaint on June 30, 2019 (*see* dkt. #49-3, at 6-7), making it wholly unreasonable to infer that Williams was complaining about events that had not happened yet.  In any event, it is *undisputed* that Williams failed to appeal from that complaint after it was rejected as duplicative.

Williams makes the same argument as to the scope of his WSPF-2019-11507, but this complaint was signed and dated June 30, 2019, and listed the date of incident as June 24, 2019.  (*See* dkt. #49-2, at 11.)  Williams' insistence that because he *appealed* that

---

[5] Indeed, at the *pleading stage*, Williams' anomalous failure to appeal the only two cases he alleges he was discouraged from appealing fairly supports his assertions of improper interference.

inmate complaint on July 9, 2019, the inmate complaint necessarily incorporates events that transpired on July 1, 2019. However, as McArdle points out, inmates cannot inject new allegations or claims in an appeal from denial of an inmate complaint. *See* Wis. Admin. Code § DOC 310.12(3) ("The CCE will only address issues raised in the original complaint."), In any event, sweeping in claims involving events that occurred during the pendency of an appeal would obviously prevent prison officials from investigating such events. As such, Williams' assertions that his appeal of WSPF-2019-11507 calls into question McArdle's July 1, 2019, treatment would frustrate the very purpose of the exhaustion requirement.

In fairness, the court will note that Williams' Inmate Complaint History Report shows that he *did* file an inmate complaint on August 29, 2019, related to a denial of medication, WSPF-2019-15207, and he appealed from the rejection of her complaint to the CCE. (*See* Ex. 1000 (dkt. #49-1) 10.) However, Williams has not explained what, if any, allegations in that complaint related to McArdle's handling of his need for medical care on July 1, 2019, a delay in treatment, or a failure to provide Williams needed medication. In fact, Williams has not even attempted to explain how, if at all, this inmate complaint implicated McArdle; instead, he repeats his assertions that there was a conspiracy to prevent him from following the exhaustion procedures, and in doing so, describes a wholly separate instance from 2018, in which McArdle did not authorize a prescription refill. (Opp. Br. (dkt # 57) 15-16.) Certainly, that unrelated inmate complaint is insufficient to exhaust his administrative remedies with respect to claims

against McArdle in this lawsuit related to events that revolved around Williams' treatment needs from his June 24, 2019, injury.

Williams also takes issue with the fact that McArdle did not file a declaration in support of her motion for summary judgment. Yet McArdle's personal knowledge is not relevant to her exhaustion affirmative defense, and it was appropriate for her to rely on the materials and arguments Wehrle submitted in support of her nearly identical motion for summary judgment.

Given McArdle's uncontested proof that Williams failed to exhaust available administrative remedies, his responses concerning more substantive matters fail to create a "genuine dispute of material fact" over his failure to exhaust. Accordingly, under Fed. R. Civ. Pro. 56(e), the court will (1) grant both defendants' motions for summary judgment and (2) dismiss without prejudice Williams' claims against defendants McArdle and Wehrle.

As a final matter, the court notes that in his opposition brief, Williams asks for monetary sanctions against these defendants for pursing a frivolous motion, raises numerous issues related to the merits of his claims in this and his other lawsuits, and charges various WSPF officials with intentionally preventing him from litigating his lawsuits, both in their handling of his grievances and his requests for legal loans. Since McArdle's and Wehrle's motions obviously were not frivolous, there is no basis for sanctions. As for Williams' various and broad charges against WSPF officials, those assertions are both conclusory and largely strain credulity, especially given Williams'

15

demonstrated ability to follow Wisconsin's grievance procedures when it suits him, as opposed to the two claims being dismissed in this opinion and order.

ORDER

IT IS ORDERED that:

1) Plaintiff Travis Williams' motion for special matters and to alter or amend (dkt. ##63, 68) are DENIED.

2) Plaintiff's motion for assistance in recruiting counsel (dkt. #71) is DENIED without prejudice.

3) Plaintiff's motion to amend (dkt. ##44, 45) is DENIED.

4) Defendant Erin Wehrle's motion for partial summary judgment (dkt. #47) is GRANTED as set forth above.

5) Defendant Sandra McArdle's motion for partial summary judgment (dkt. #52) is GRANTED as set forth above.

6) Defendants Wehrle and McArdle are dismissed from this lawsuit.

7) At the close of this case, the clerk of court is directed to enter judgment in defendants' McArdle and Wehrle's favor.

Entered this 2nd day of June, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge