IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAVIS DELANEY WILLIAMS,

          Plaintiff,          OPINION AND ORDER

  v.

                                  20-cv-1021-wmc

SHERYL KINYON and
JAMIE ADAMS,

          Defendants.

---

*Pro se* plaintiff Travis Williams is incarcerated at the Wisconsin Secure Program Facility ("WSPF"). In this lawsuit Williams claims that WSPF employees Sheryl Kinyon and Jamie Adams violated his Eighth Amendment rights when they were deliberately indifferent to Williams's medical needs after he fell on June 24, 2019. Before the court are Williams' motion to compel (dkt. 72), motions to strike defendants' expert disclosures (dkts. 79, 93), and motion to seal, and defendants' motion for sanctions (dkt. 91).[1] For the reasons that follow, I am denying Williams' motions and granting defendants' motion.

---

[1] William also filed a motion inquiring into whether the deadlines in this case have been stayed. (Dkt. 94.) They have not. The dispositive motion deadline has been extended to June 28, 2021, and allowing McArdle to join the State Defendants' motion did not stay this matter. Williams also seeks clarification as to what has been stricken the record, since he has filed multiple motions to strike. (Dkt. 95.) On May 20, 2021, I granted defendants' motion to strike dkts. 83, 84, 85, and 86 because they were filed erroneously. (Dkt. #0.) In *this* opinion, I address Williams' motions to strike.

OPINION

**I.   Williams' motions**

In his first motion, Williams asks that the court compel defendants to respond to his discovery requests served on defendants Kinyon and Adams in January 2021. (Dkt. 72.)[2] Defendants respond that they received Williams's discovery requests on January 14, 2021; the court stayed discovery until March 29, 2021; then they mailed their responses to Williams' discovery requests on April 27, 2021, 29 days following the expiration of the court's discovery stay. Therefore, their position is that Williams' motion is moot. In reply, Williams does not claim that these defendants have not responded to his requests; instead, he renews his motion to compel because he believes that defendants have turned over 2100 pages of non-responsive "garbage" and "crap" that he cannot use in this litigation. (Dkt. 103.)[3] I will address Williams' incivility below. Substantively, Williams has not shown any attempt to work out with the AAGs the specific deficiencies in their document production before moving to compel defendants to supplement their responses. At this point, I have to basis to conclude that Kinyon or Adams have not sufficiently complied with Williams' discovery requests, so this motion is denied.

Next, Williams has moved to strike defendants Kinyon and Adams' expert disclosures. (Dkt. 79.)[4] Pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), defendants have disclosed

---

[2] Williams also asks the court to compel discovery responses from defendant McArdle. On June 3, 2021, the court granted McArdle's motion for summary judgment on exhaustion grounds, so McArdle is out of this lawsuit. She has no further discovery obligations to Williams.

[3] Williams also takes issue with McArdle's discovery responses. As just noted, McArdle is no longer a defendant in this lawsuit, so she no longer is obliged to respond to his discovery requests. If Williams believes she has relevant information, then Williams may serve her with a third-party subpoena for the production of documents under Rule 45. It's likely the same AAGs would respond on McArdle's behalf.

[4] Williams's motion to strike McArdle's expert disclosure (Dkt. 93) is denied as moot.

*themselves* as their own experts, along with former defendant Erin Wehrle. All three will testify, not only as fact witnesses, regarding their actual interactions with Williams, but also as experts: each of them intends to offer expert testimony generally about the relevant standard of care for evaluation and treatment of medical issues similar to those suffered by Williams and then each will offer, as an expert, the opinion that the care provided to Williams was within the standards that they have set out.

Williams argues that Kinyon and Werhle are not qualified to provide expert testimony because they are defendants and therefore must provide testimony like any other witness. Williams cites *Burgess v. Mink*, No. 18-cv-527, dkt. 160 (W.D. Wis. Mar. 6, 2020), in which Judge Peterson declined to consider the expert opinion of a former defendant for purposes of summary judgment, observing that the expert's testimony did not separate personal knowledge from her expert analysis, as required by the Court of Appeals for the Seventh Circuit in *United States v. Jett*, 908 F.3d 252, 267-70 (7th Cir. 2018).

Williams raises a valid point. For Kinyon and Werhle, to declare themselves experts and to opine that everything they did was proper very well could be viewed as improper bootstrapping. That's the conclusion that Judge Peterson reached in *Burgess*, but that was after he had reviewed all of the proposed testimony and had also noted how intermixed the witness's opinion testimony was with her narrative testimony. In this case, the court is not going to strike the challenged testimony at this time because the court doesn't know what Kinyon and Werhle actually intend to say as experts, or whether their narrative testimony can be separated from their expert testimony. It may be that Judge Conley will allow them to offer dual testimony and allow Williams to argue to the jury that it should reject their expert opinions as hopelessly self-serving. But Judge Conley won't be in a position to make that decision until it

has all of the necessary information. I am denying Williams's motion to strike without prejudice; he should raise this concern again in a timely-filed motion in limine.

Finally, Williams has filed a four-sentence motion to seal the use of his middle name and middle initial, apparently retroactively as well as prospectively. (Dkt. 99.) Williams simply states that he is being transferred to a different section and he believes that the use of his middle name will prejudice him "within the DOC and other legitimate business ventures." Williams asks for a hearing on this request, presumably so that he can expand on his explanation. Williams has been using his middle name throughout the court of this lawsuit, and he does not explain with any degree of specificity the actual nature of his concerns going forward, either to obtain relief, or to obtain a hearing on this request. Therefore, finding no safety, security, or business-related concern associated with the use of Williams' middle name in this lawsuit, I am denying this motion without prejudice. If Williams chooses to renew this motion, then he will have to provide sufficient information to allow the court to conclude that he has a legitimate, persuasive reason to redact his middle name from the public record.

I note that Williams has written his middle initial on his filings, including on his motion to stop using his middle initial, dkt. 99. It is entirely up to Williams whether he continues using his middle name hereafter, but the court will not redact past filings absent good cause.

## II. Defendants' motion for sanctions

Defendants ask that the court sanction Williams for serving defendants abusive discovery requests. Williams served defendants with a Third Set of Requests for Production of Documents, Admissions and Interrogatories. Williams explicitly asked:

4

    3. Produce the exact diameter of Sheryl Kinyon and Jamie Adams Ears. Its need to see if there's any type of blockage.

    4. Produce Sheryl Kinyon weight and its need to show that a person that big can't walk that fast or take that many steps per pound.

    5. Produce Sheryl Kinyon exact shoe size as well as Jamie Adams to evaluate the steps it takes to enter alpha unit vestibule or exit alpha unit vestibule of 101-102.

(Ex. 1006, dkt. 92-4, 4.) Among Williams' requests for admissions were:

    1. Sheryl Kinyon don't you weigh over 250 pounds.

    2. Sheryl Kinyon isn't it true that you are an unsanitary person.

    3. Jamie Adams isn't it true that you are a part time call girl.

    4. Jamie Adams isn't it true that you had Mark Kartman's baby late last year.

    5. Erin Wherle isn't it true that you are Kinyon personal scape goat.

(*Id.* at 5-6.) Defendants add that in Williams' first discovery request, he included inappropriate requests such as "Kinyon, isn't it true your Adams personal bodyguard," and "Adams isn't it true that 'cause Kartmans your baby daddy you feel you got an open season pass to mistreat the plaintiff." (Ex. 1008, dkt. 92-3, 5.)[5]

Defendants ask that the court enter an order (1) freeing them from responding to Williams' Third Set of Requests for Production of Documents, Admissions and Interrogatories, and (2) prohibiting Williams from serving future discovery requests as a sanction for his abuse of the discovery process and inappropriate, abusive language towards defendants. Defendants

---

[5] Although not part of Williams' discovery request, defendants also point out that Williams's verbal disrespect of the defendants is not confined to this lawsuit. In July of 2019, Williams submitted written Health Services Requests ("HSRs") to defendants, insulting them in personal and misogynistic terms (Ex. 1007, dkt. 92-2.) The court notes this submission but will not rely on it in imposing sanctions.

explain that they have already produced to Williams over 3100 pages of medical records, and they contend that they should no longer be required to respond to Williams' abusive tactics.

Having been called out by defendants, Williams tries to justify these discovery requests rather than concede their obvious impropriety and commit to proceeding more courteously going forward. That was a mistake. Williams's relevance arguments are patently unbelievable, and they are rude to the defendants, thereby compounding the intended disrespect. Therefore, everything about Williams's handling of these discovery requests is vexatious. *See H-D-Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 2012 WL 404895 at *3 (E.D. Wis. 2012) (using *Black's Law Dictionary* to define "vexatious" as "without reasonable cause or excuse; harassing; annoying"). In short, Williams intended that this discovery harass defendants and cast aspersions on their character. His misguided defense of his misconduct has unnecessarily absorbed judicial resources to state the obvious to Williams: what he is doing is improper. Williams knows better: the December 18, 2020 Preliminary Pretrial Conference told Williams that Rule 26[c] protects parties from discovery requests that are annoying or oppressive, *see* dkt. 42 at 9. This court has told this to Williams in all of his previous lawsuits, dating back to September 7, 2018, *see* dkt. 36 at 9, in *Williams v. Dr. Syed*, 16-cv-474-wmc.

This court has the inherent power to impose respect and decorum, and to fashion appropriate sanctions for conduct that abuses the judicial process, including revoking an offending party's IFP status and dismissing his lawsuit. *Lamon v. Funk*, 2016 WL 6647754 at *2 (S.D. Ill. 2016); *see also Henderson v. Brower*, 2018 WL 6267907 at *3 (E.D. Wis. 2018) (courts have inherent power to sanction a party's misconduct); *Bernegger v. Gray & Associates LLP*, 2009 WL 3148723 at *4, n.3 (failure to heed the court's warning regarding uncivil conduct is grounds for dismissal as a sanction); *Prude v. C.O. Ward*, 18-cv-79-slc, June 25, 2019

Order, dkt. 57, at 1-2 (if pro se prisoner plaintiff continues to serve vexatious discovery demands on defendants, then the court will dismiss his lawsuit as a sanction under Rule 37(b)). Williams is put on notice: he must treat the defendants and their attorneys with respect and consideration in this lawsuit, in his other pending lawsuits, and in any future lawsuits that he might file in this court, regardless whether he thinks they deserve it. If Williams fails to do so, then this court, upon finding such misconduct, shall dismiss the lawsuit as a sanction.

Dismissal is not on the table today. I am granting defendants' motion for sanctions in the manner set forth below.

ORDER

IT IS ORDERED that:

1) Plaintiff's motions to compel (dkts. 72, 103) is DENIED.

2) Plaintiff's motions to strike expert witness disclosures (dkts. 79, 93) are DENIED WITHOUT PREJUDICE.

3) Defendants' motion for sanctions (dkt. 91) is GRANTED as follows:

    (a) Williams may request objectively necessary clarification and objectively necessary supplementation of the discovery to which defendants already have responded.

    (b) Other than this, discovery is closed for Williams:

        (i) Defendants are not required to respond to Williams' Third Set of Requests for Production of Documents, Admissions and Interrogatories.

        (ii) Williams may not serve defendants with new discovery requests.

3) Plaintiff's motion to strike the motion to join (dkt. 94) is DENIED.

4) Plaintiff's motion for clarification (dkt. 95) is DENIED.

5) Plaintiff's motion to seal the use of middle name (dkt. 99) is DENIED WITHOUT PREJUDICE.

Entered this 15th day of June, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge